NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5526-15T1
                    A-0033-16T1

THERESA WEAR and RICHARD
WEAR,

     Plaintiffs/Intervenors-
     Appellants,

v.

SELECTIVE INSURANCE COMPANY,

     Defendant-Respondent.

_____

WOODBURY MEDICAL CENTER
ASSOCIATES, LLP,

     Plaintiff-Respondent,

v.

SELECTIVE INSURANCE COMPANY,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 20, 2018

APPELLATE DIVISION

Argued April 18, 2018 — Decided July 20, 2018

Before Judges Koblitz, Manahan and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Gloucester County, Docket No.
L-1583-13.

Bruce H. Zamost argued the cause for
appellants Theresa Wear and Richard Wear (in
A-5526-15) and respondents (in A-0033-16)
(Helmer, Conley & Kasselman, PA, attorneys;
Bruce H. Zamost, of counsel and on the
brief).

Richard J. Mirra argued the cause for respondent Selective Insurance (in A-5526-15) and appellant in (A-0033-16) (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Richard J. Mirra, of counsel and on the briefs; John C. Simons, on the briefs).

Mitchell H. Kizner argued the cause for respondent Woodbury Medical Center Associates, LLP (Flaster Greenberg, PC, attorneys; Mitchell H. Kizner, of counsel and on the brief).

The opinion of the court was delivered by

MANAHAN, J.A.D.

The instant case presents another example of the complexities sometimes involved with the resolution of insurance coverage disputes based upon exceptions to coverage. The principal issue is whether exclusionary language in a policy issued to Woodbury Medical Center Associates, LLP (Woodbury Medical) by Selective Insurance Company (Selective) precluded coverage for an environmental personal injury claim by Theresa Wear and a per quod claim by Richard Wear (collectively the Wears).

Having considered the record in light of controlling law, we affirm in part and reverse in part.

Woodbury Medical is the owner of an office building in Woodbury, New Jersey. Theresa Wear worked in the building as a registered nurse (RN) for Underwood Medical Center. She claimed to suffer injuries due to exposure to alleged toxic conditions in the building. In their complaint against Woodbury Medical, the Wears averred that Theresa was injured due to "exposure to mold and the HVAC [(heating, ventilation and air conditioning)] filter fragments from when the HVAC system was activated in the basement of the property." The Wears further averred that Woodbury Medical had a duty to keep the premises safe from: "1) hazardous toxic condition[s]; 2) dangerous air pollutants; 3) aspergillus fungus/mold hazards; and 4) other environmental dangers."

Selective issued a commercial umbrella and business owners insurance policy (the policy) to Woodbury Medical, which was in effect at the time of the Wears' claim. The policy provided Woodbury Medical with "protection for business liability for any bodily injury 'to which this insurance applies.'" The policy included a fungi or bacteria exclusion:

> A. The following exclusion is added to Paragraph B.1., Exclusions — Application To Business Liability Coverage:

q. Fungi or Bacteria

(1) "Bodily injury[,"] "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, <u>regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage</u>.

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by an insured or by any other person or entity.

. . . .

B. The following definition is added [to] Paragraph F. Liability And Medical Expenses Definitions:

1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or release [sic] by fungi.

[(Emphasis added).]

Woodbury Medical notified Selective of the Wears' claim in May 2011. In August 2012, after conducting an investigation, Selective issued a denial of coverage letter referencing the exclusionary language in the policy. The letter stated that the "policy in effect for Woodbury does not provide coverage for any and all bodily injuries alleged by Theresa Wear arising out of her exposure to mold, mildew, fungi or bacteria or medical expenses" as they were, among other unrelated reasons, "excluded by virtue of Fungi or Bacteria Exclusion Endorsement Forms . . . contained in the policies." Selective did not issue a reservation of rights letter as it took the position that the anti-concurrent and anti-sequential language in the exclusion precluded coverage even if there were other causes which may have contributed to the injury.

Woodbury Medical instituted an action against Selective, later amended, seeking a declaration that Selective was required to defend and indemnify Woodbury Medical in the Wears' litigation. Woodbury Medical moved for partial summary judgment. Selective filed a cross-motion for summary judgment maintaining there was no coverage for the claims.

On January 9, 2015, the judge granted Woodbury Medical's motion for partial summary judgment and ordered that Selective immediately fund Woodbury Medical's defense in the underlying

action, reimburse Woodbury Medical for expenses it already incurred in the defense of the Wears' litigation, and pay attorneys' fees incurred by Woodbury Medical in the declaratory judgment action.[1] In a separate order, also dated January 9, 2015, the judge denied Selective's cross-motion for summary judgment. On January 22, 2015, in a supplemental order, the judge clarified that the January 9, 2015 order was "to be considered an interlocutory order applying ONLY to the defense obligations of Selective . . . ." The supplemental order also provided that the trial in the declaratory judgment action was to be adjourned until a resolution was reached in the Wears' litigation.

In reaching the determination on Selective's obligation to defend, the judge stated:

> The [c]ourt certainly reviewed the factual basis as alleged by Ms. Ware, [sic] who claims that she suffered bodily injury as a result of exposure to hazardous conditions.
>
> I acknowledge that there is an allegation that relates to the mold, but I am in agreement with the plaintiff's

---

[1] On July 17, 2015, the judge awarded $177,550 to Woodbury Medical for reimbursement of past counsel fees and costs for the time period of March 3, 2013 through April 2015, pursuant to the January 9, 2015 order. The judge also awarded $83,635 to Woodbury Medical for reimbursement of past counsel fees and costs for the declaratory judgment action.

counsel. There also definitely is an allegation that pertains to the fibers from the filter, the air conditioning system, or the filter fragments. It is an environmental hazard that is claimed. It is something besides the mold issue, the [c]ourt finds.

I understand your arguments. But I do find that there has been an indication of other environmental damages and based on the case law, I find that there is a duty to defend in this instance. I have examined the complaint. I have reviewed the policy limitations. But if there are any doubts, they are to be resolved in favor of the insured.

Based on the cases as cited by plaintiff's counsel, I do find that the insurance company is required to defend in this instance.

[D]efendant does owe the plaintiff the duty in the underlying lawsuit. It's appropriate here because there is another cause for Ms. Ware's [sic] injuries.

Selective moved for leave to appeal, which we denied. Selective then moved before the Law Division to stay the order compelling it to fund Woodbury Medical's defense, which was denied. Thereafter, Woodbury Medical moved to enforce litigant's rights and Selective cross-moved for reconsideration of both the order requiring Selective to provide a defense and the order denying a stay. The judge granted Woodbury Medical's motion to enforce litigant's rights and ordered Selective to pay Woodbury Medical counsel fees for its defense in the Wears'

litigation within thirty days.  Selective again moved for leave to appeal, which we denied.[2]

By agreement of the parties, the Wears' litigation was submitted to arbitration.  At the conclusion of the testimonial hearing, the arbitrator rendered a one-page written award in favor of the Wears for $300,000.  The arbitrator noted that the award was for a "claim by RN for workplace exposure to toxic aspergillus mold."

After the rendering of the award, the Wears and Woodbury Medical entered into a consent order amicably resolving the Wears' litigation.  The consent order contained the following essential terms.  A judgment would be entered in favor of the Wears against Woodbury Medical in the amount of $300,000.  Woodbury Medical would assign its coverage rights to the Wears, who then bore the burden of proceeding against Selective "with respect to Selective's obligation to indemnify [Woodbury Medical] for the claims brought and judgment obtained . . . under liability insurance policies issued by Selective."  The Wears would "never . . . execute upon [Woodbury Medical] or its assets, or those of its past, present and future principals . . . in order to collect the [j]udgment, or . . . in any other

---

[2]   Selective did not comply with the order mandating payment of counsel fees, nor has it done so to date.

A-5526-15T1

way seek payment of the [j]udgment or any other sum from [Woodbury Medical] . . . ." The Wears relinquished all claims against Woodbury Medical whether or not they were successful against Selective. The order stated: "[N]o injury was suffered by [the Wears] as a result of exposure to mold at premises owned by [Woodbury Medical]."

The Wears moved to intervene as plaintiffs in the declaratory action. Among other arguments, the Wears asserted Selective was obligated to pay the $300,000 judgment premised upon our Supreme Court's holding in Griggs v. Bertram, 88 N.J. 347 (1982) and premised upon principles of equitable estoppel due to Selective's bad faith and wrongful refusal to defend.

The motion to intervene was granted by order on June 26, 2015. The order limited intervention to "coverage and/or indemnification under the policy of insurance issued to Woodbury Medical . . . ." The order provided that the Wears were substituted for Woodbury Medical for the purpose of asserting indemnification only and not to assert claims for "bad faith" or failure to defend against Selective.

In support of their motion, the Wears provided an expert report by Robert J. Laumbach, who opined that mold was not a cause of Theresa's injuries. Selective moved to bar the expert report and for summary judgment dismissing the Wears'

intervention. Selective argued the consent order was unenforceable based upon Griggs.

By order of December 23, 2015, the judge denied all motions. In her attached statement of reasons, the judge found a Griggs analysis was triggered as Selective wrongfully denied Woodbury Medical a defense by continuously failing to comply with the January 9, 2015 order. The judge further noted that the "Griggs analysis is triggered regardless of whether an insurer ultimately prevails on the question of coverage pursuant to Passaic Valley."[3] The judge held that the issue of bad faith pertaining to the settlement remained open "pending future discovery and/or future [m]otion practice." Regarding the issue of the expert's report, the judge held the Wears' expert was not barred from testifying since "[t]he present action, though related to the underlying Wear matter, is a separate, distinct case with a separate discovery period."

On January 20, 2016, Selective filed a motion to settle the form of the December 23, 2015 orders and to determine the scope of the hearing to be conducted. The Wears cross-moved for partial summary judgment under the reasonableness prong of the Griggs analysis. Thereafter, by consent order dated February

---

[3] Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596 (2011).

26, 2016, the Wears and Selective settled the terms of the December 23, 2015 orders. The consent order provided that the monetary settlement between Woodbury Medical and the Wears based upon the arbitration award satisfied the reasonableness prong under Griggs. The consent order further provided that the sole issue in contest was whether the settlement between Woodbury Medical and the Wears was made in good faith. The good faith issue was to be determined by the judge on the papers submitted.

After argument and after considering the record and papers, the judge issued an oral opinion in which she held that the Wears did not meet the second prong of the Griggs settlement enforcement analysis. The judge found a lack of good faith as "there [has] been a total effort made by the Wears and Woodbury Medical to force this issue to be covered by Selective because they knew of the mold exclusion . . . ." As such, the judge found the settlement "which places a 100 percent liability on Selective," to be a sham and concluded the settlement was unenforceable against Selective. The oral decision was memorialized in an order. The order also dismissed the intervenor complaint with prejudice.[4]

_____

[4] The judge also granted Woodbury Medical's motion without prejudice for an amendment of the July 2015 order regarding the counsel fees owed by Selective. The judge added fees incurred by Woodbury Medical for the medical expert provided to the Wears

(continued)

The Wears filed a motion for a new trial and judgment notwithstanding the verdict.[5]  The motion was denied in an August 2016 order.  The Wears filed an appeal.  Selective filed a separate appeal of numerous orders concerning its duty to defend and to pay counsel fees as well as the denial of stays.[6]  We granted Selective's motion to consolidate the appeals.

On appeal, Selective raises the following points:[7]

POINT I

THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT REQUIRING SELECTIVE TO DEFEND WMCA DESPITE THE CLEAR EXCLUSION OF COVERAGE FOR INJURIES CAUSED BY MOLD, IN WHOLE OR IN PART, REGARDLESS OF WHETHER ANY OTHER CAUSE CONTRIBUTED CONCURRENTLY OR IN ANY SEQUENCE TO THE ALLEGED INJURIES.

POINT II

THE TRIAL COURT MISCONSTRUED FLOMERFELT V. CARDIELLO, 202 N.J. 432 (2010) WHICH DOES NOT APPLY TO THE FACTS OF THIS CASE.

---

(continued)
to the total sum of fees owed by Selective for the declaratory action.

[5]  We note that there was no trial on any of the issues.

[6]  Selective's notice of appeal recites thirteen discrete orders including two orders of the Appellate Division denying leave to appeal.

[7]  Although the Wears' appeal was filed prior to Selective's appeal, we address Selective's points on appeal first for clarity.

## POINT III

THE TRIAL COURT ORDERS TO COMPEL SELECTIVE TO ASSUME [WOODBURY MEDICAL]'S DEFENSE DESPITE THE CONFLICT OF INTEREST BETWEEN SELECTIVE AND [WOODBURY MEDICAL] AND DESPITE THE FACT THAT THE COVERAGE ISSUE WOULD NOT BE RESOLVED IN THE UNDERLING [SIC] ACTION WAS ERROR.

On appeal, the Wears raise the following points:

## POINT I

THE LAW OF THE CASE DOCTRINE WAS VIOLATED WHEN THE TRIAL JUDGE MADE AN ENTIRELY CONTRADICTORY RULING ON THE KEY ISSUE, WHETHER THE SETTLEMENT WAS ONE OF GOOD FAITH OR BAD FAITH, BASED ON IDENTICAL EVIDENCE. ON [DECEMBER 23, 2015], THE TRIAL COURT RULED THAT BAD FAITH WAS ABSENT, IN ITS ADJUDICATION OF WHETHER JUDICIAL ESTOPPEL WAS APPLICABLE TO PLAINTIFFS' ADOPTION OF ONE CAUSATION THEORY OVER ANOTHER. FOUR MONTHS LATER, ON [APRIL 1, 2016], THE TRIAL COURT HELD THAT THE SETTLEMENT CONSTITUTED A BAD FAITH SHAM. WHEN A JUDGE DECIDES NOT TO FOLLOW THE LAW OF THE CASE DOCTRINE, DECISIONAL LAW REQUIRES THAT THE JUDGE EXPLAIN THE REASONS FOR THAT DEPARTURE AND THE SUBSTANTIALLY DIFFERENT EVIDENCE THAT WAS NOT PREVIOUSLY AVAILABLE. [R.] 1:6-2(F). SISLER V. GANNETT CO., 222 N.J. SUPER. 153 [] (APP. DIV. 1987), CERTIF. DENIED, 110 N.J. 304 [] (1988). THE TRIAL COURT FAILED TO DO SO HERE AND IN DOING SO WRONGLY DECLINED TO ENFORCE THIS GRIGGS SETTLEMENT AGAINST SELECTIVE.

## POINT II

THE LAW OF THE CASE DOCTRINE WAS VIOLATED WHEN THE TRIAL JUDGE MADE AN ENTIRELY CONTRADICTORY RULING ON THE KEY ISSUE, WHETHER THE SETTLEMENT WAS ONE OF GOOD FAITH OR BAD FAITH, BASED ON IDENTICAL EVIDENCE.

A-5526-15T1

ON [DECEMBER 23, 2015], THE TRIAL COURT RULED THAT THE SETTLEMENT WAS, PRIMA FACIE, THE PRODUCT OF GOOD FAITH. FOUR MONTHS LATER, ON [APRIL 1, 2016], THE TRIAL COURT HELD THAT THE SETTLEMENT CONSTITUTED A BAD FAITH SHAM. WHEN A JUDGE DECIDES NOT TO FOLLOW THE LAW OF THE CASE DOCTRINE, DECISIONAL LAW REQUIRES THAT THE JUDGE EXPLAIN THE REASONS FOR THAT DEPARTURE AND THE SUBSTANTIALLY DIFFERENT EVIDENCE THAT WAS NOT PREVIOUSLY AVAILABLE. [R.] 1:6-2(F). SISLER V. GANNETT CO., 222 N.J. SUPER. 153 [] (APP. DIV. 1987), CERTIF. DENIED, 110 N.J. 304 [] (1988). THE TRIAL COURT FAILED TO DO SO HERE AND IN DOING SO WRONGLY DECLINED TO ENFORCE THIS GRIGGS SETTLEMENT AGAINST SELECTIVE.

## POINT III

IT WAS SELECTIVE'S BURDEN TO PROVE THAT THE SETTLEMENT WAS A BAD FAITH SHAM. HOWEVER, THE TRIAL COURT WRONGLY SHIFTED THAT BURDEN TO THE WEARS TO PROVE THAT THE SETTLEMENT WAS NOT A SHAM, A BURDEN-SHIFTING WHICH VISITED A MISCARRIAGE OF JUSTICE UPON THE WEARS.

## POINT IV

THE UNIVERSE OF EVIDENCE PRESENTED BY THE PARTIES WAS IDENTICAL THROUGHOUT THE CONTRADICTORY TRIAL COURT RULINGS OF [DECEMBER 23, 2015] ON THE ONE HAND AND THE RULINGS OF [APRIL 1, 2016] AND [AUGUST 12, 2016] ON THE OTHER. SELECTIVE CHOSE TO REFRAIN FROM OBTAINING AN EXPERT WITNESS ON THE GOOD FAITH ISSUE, DESPITE AN EXTENSION OF TIME TO DO SO. EACH OF SELECTIVE'S ARGUMENTS THAT THE SETTLEMENT WAS AN UTTER SHAM WERE ANALYZED AND REJECTED BY THE TRIAL COURT ON [DECEMBER 23, 2015] AND NOTHING WAS PRESENTED TO REBUT THE COMPREHENSIVE EXPERT CONCLUSIONS OF PLAINTIFFS' OCCUPATIONAL AND ENVIRONMENTAL MEDICINE/INDUSTRIAL HYGIENE

EXPERT, ROBERT J. LAUMBACH, M.D., M.P.H., C.I.H.

### POINT V

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS [AUGUST 12, 2016] AND [APRIL 1, 2016] RULINGS BECAUSE THOSE RULINGS WRONGLY DISREGARDED PARAGRAPH 1 OF THE CONSENT ORDER OF [FEBRUARY 26, 2016].

### II.

We commence by addressing Selective's argument that the judge erred in granting partial summary judgment to Woodbury Medical in holding Selective had a duty to defend. Selective argues "[t]here was no allegation that [Theresa] suffered divisible injuries due to separate and discrete etiologies or that exposure to mold was not a principal cause of her symptoms." As such, the policy's exclusion, which included anti-concurrent and anti-sequential language, barred coverage. Woodbury Medical argues in reply that Selective had a duty to defend as the Wears alleged alternative causes of injury, separate and apart from mold.

The judge's determination that Selective had a duty to defend was decided by the grant of summary judgment. Thus, the judge's conclusions and interpretation of the record are not entitled to our deference. We apply the same standard the judge applied in ruling on summary judgment. W.J.A. v. D.A., 210 N.J. 229, 237 (2012).

At the outset, we agree with the judge that, when disputes arise between the insured and insurer, the duty of an insurer to defend is generally determined by a side-by-side comparison of the policy and the complaint, and is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment. Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 340 N.J. Super. 223, 241-42 (App. Div. 2001); see also Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953). "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Flomerfelt, 202 N.J. at 444 (citation omitted).

The interpretation of an insurance policy upon established facts is a question of law for the court to determine. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004). "Generally, '[w]hen interpreting an insurance policy, courts should give the policy's words "their plain, ordinary meaning."'" Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 118 (2005) (quoting President v. Jenkins, 180 N.J. 550, 562 (2004)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt,

202 N.J. at 441 (citing <u>Kampf v. Franklin Life Ins. Co.</u>, 33 N.J. 36, 43 (1960)).

As this court held in <u>New Jersey Manufacturers Insurance Co. v. Vizcaino</u>, in permitting the dispute of uncovered claims, courts protect both parties by ensuring that the insurer does not incur responsibility for uncovered claims and that the insured is entitled to both defense and indemnity if the dispute is resolved in its favor. 392 N.J. Super. 366, 370 (App. Div. 2007). In line with those principles, exclusions in insurance policies are presumptively valid and enforceable "if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" <u>Flomerfelt</u>, 202 N.J. at 441 (quoting <u>Princeton Ins. Co. v. Chunmuang</u>, 151 N.J. 80, 95 (1997)). In contrast, courts will find "a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." <u>Weedo v. Stone-E-Brick, Inc.</u>, 81 N.J. 233, 247 (1979).

Generally, exclusions are narrowly construed. <u>Flomerfelt</u>, 202 N.J. at 442. The insurer has the burden of bringing the case within the exclusion. <u>Am. Motorists Ins. Co. v. L-C-A Sales Co.</u>, 155 N.J. 29, 41 (1998). Courts must be careful, however, "not to disregard the 'clear import and intent' of a policy's exclusion . . . ." <u>Flomerfelt</u>, 202 N.J. at 442

(quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J. Super. 29, 41 (App. Div. 1973)).  Far-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage.  Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 105 (App. Div. 1998).

In a situation where "two or more identifiable causes — one a covered event and one excluded — may contribute to a single property loss," there is coverage absent an anti-concurrent or anti-sequential clause in the policy.  See Simonetti, 372 N.J. Super. at 431 (citing Assurance Co. of Am., Inc. v. Jay-Mar, Inc., 38 F. Supp. 2d 349, 352-54 (D.N.J. 1999)).  As noted, the policy at issue contains within the exclusion language an anti-concurrent and anti-sequential clause and excludes coverage from any loss or damage "regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage."  We do not consider the exclusion language to be ambiguous.  A fair reading of the exclusion is that, despite other potential causes, mold must be excluded as a causative factor in order for there to be a covered loss.

The judge concluded that Selective owed a defense to Woodbury Medical while acknowledging that mold was averred in the complaint as a causative factor.  The judge found that the

complaint averred other "environmental" hazards as causative factors thus requiring a defense. However, other than referencing those allegations, the judge did not analyze whether the anti-concurrent and anti-sequential language in the exclusion would bar coverage or, at a minimum, raise a substantial question as to the existence of coverage.

Succinctly, in the absence of a comparison of the complaint with the exclusion's anti-concurrent and anti-sequential language, we conclude that the issue of coverage was not of such clarity at this stage of the action to require Selective to defend. In reaching our conclusion, we are informed by the following.

Neither the duty to defend nor the duty to indemnify "exists except with respect to occurrences for which the policy provides coverage." Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984). Here, the judge cited Flomerfelt as authority, which provides that:

> in circumstances in which the underlying coverage question cannot be decided from the face of the complaint, the insurer is obligated to provide a defense until all potentially covered claims are resolved, but the resolution may be through adjudication of the complaint or in a separate proceeding between insured and insurer either before or after that decision is reached.
>
> [202 N.J. at 447.]

There are two exceptions to this general rule.

> The insurer need not provide the defense at the outset if the allegations include claims that are not covered by the policy as well as claims that are covered or if the question of coverage is not, by its nature, capable of determination in the underlying action against the insured. In those situations, the insurer's obligation to defend becomes an obligation to reimburse for defense costs to the extent that the defense is later determined to have been attributable to the covered claims and, if coverage is not determinable in the underlying action, it is later determined that there was in fact coverage.
>
> [Muralo Co., Inc. v. Employers Ins. of Wausau, 334 N.J. Super. 282, 289-90 (App. Div. 2000).]

In short, "[i]f an insurer believes that the evidence indicates that the claim is not covered, the insurer is not always required to provide a defense." Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 274 (App. Div. 2008); see Passaic Valley, 206 N.J. at 615-18 (explaining that Burd v. Sussex Mut. Ins., 56 N.J. 383, 393-95 (1970) permits an insurer to fulfill its defense obligations by reserving rights and disputing coverage, thereby translating its obligation into one for reimbursement if it is later adjudged that the claims were within the policy covenant to pay); see also Grand Cove II Condo. Ass'n, Inc. v. Ginsberg, 291 N.J. Super. 58, 73-75 (App. Div. 1996) (discussing problems that can arise with respect to

the duty to defend and conversion of that duty to one of reimbursement).

"Although the duty to defend is broader than the duty to pay, the duty 'is not broader in the sense that it extends to claims not covered by the covenant to pay.'" Grand Cove II, 291 N.J. Super. at 72 (quoting Horesh v. State Farm Fire & Cas. Co., 265 N.J. Super. 32, 38 (App. Div. 1993)). Therefore, "[i]f an excluded claim is made, the insurer has no duty to undertake the expense and effort to defeat it, however frivolous it may appear to be." Ibid. (quoting Horesh, 265 N.J. Super. at 39).

Grand Cove II addressed an alternative to the duty to defend, "the duty to reimburse."

> Where a conflict exists between an insurer and its insured by virtue of the insurer's duty to defend mutually-exclusive covered and non-covered claims against the insured, the duty to defend is translated into a duty to reimburse the insured for the cost of defending the underlying action if it should ultimately be determined, based on the disposition of that action, that the insured was entitled to a defense. [Burd, 56 N.J. at 390.]
>
> Similarly, where an insurer did not undertake defense of the case at the inception of the litigation, the duty to defend may be converted into a duty to reimburse. [SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 200 (1992).]
>
> [Id. at 73-74 (citations omitted).]

In Grand Cove II, this court found the insurance coverage issues in the case created problems with the trial court's mandate that the insurance company must immediately assume defense of all the causes of action of the insured. Id. at 74-75. Such issues included, but were not limited to: the trial court's concession that certain claims were not covered, an inherent conflict due to late-raised claims, and the fact that the underlying litigation would not resolve the coverage issues. Ibid. Therefore, we held the "insurers' duty to defend should have been converted to a duty to reimburse pending the outcome of the coverage litigation." Id. at 76.

Here, through our comparison of the averments in the complaint to the policy's exclusion, we conclude it was premature to order Selective to assume responsibility for the defense since it was unclear, based on the anti-concurrent and anti-sequential language in the exclusion, whether any claims would be covered. Therefore, as in Grand Cove II, we hold that the duty to defend should be converted to a duty to reimburse pending resolution of the coverage action.

III.

Given our determination that the decision obligating Selective to defend was premature, it follows that the decision holding that Griggs applied was without basis. The predicate

22                                              A-5526-15T1

for the application of <u>Griggs</u> is whether there was a breach of duty by Selective by its failure to defend Woodbury Medical. Only if Selective was determined to be in default of that duty would it trigger indemnification. In <u>Griggs</u>, our Supreme Court held:

> Where an insurer wrongfully refused coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him. The only qualifications to this rule are that the amount paid in settlement be reasonable and that the payment be made in good faith.
>
> [<u>Griggs</u>, 88 N.J. at 364 (citing <u>Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford</u>, 72 N.J. 63, 71 (1976) (quoting <u>N.J. Mfrs. Indem. Ins. Co. v. U.S. Cas. Co.</u>, 91 N.J. Super. 404, 407-08 (App. Div. 1966))).]

As our Supreme Court held in <u>Passaic Valley</u>, a good-faith challenge to coverage is not a breach of an obligation to defend. 206 N.J. at 617. Here, we are satisfied that Selective was within its rights to dispute coverage based upon the language of the policy's exclusion. <u>Vizcaino</u>, 392 N.J. Super. at 370.

We are also satisfied that, in reaching its claim decision, Selective did not breach its duty to act in good faith. <u>Fireman's Fund</u>, 72 N.J. at 73. Saliently, Woodbury Medical has

not argued, as in Griggs, that there was an unreasonable delay by Selective in regard to its coverage decision so as to prejudice the defense.

In sum, in the absence by Selective of a breach of its duty to defend, Griggs was inapplicable.

Having determined that the judge's decision to apply Griggs to the enforcement of the settlement was a premature finding of a breach of duty to defend, we vacate the orders that were the product of that decision. Specifically, those orders are the consent order between Selective and the Wears dated February 26, 2016, and the order denying enforcement of the settlement.

We also reverse the order dismissing the declaratory judgment action and remand the action for its resolution. In conformance therewith, we affirm the decision to allow the Wears to intervene in the declaratory judgment action.

In reaching our decision, we express no view on the enforcement of the settlement reached between the Wears and Woodbury Medical should there be a judicial determination of coverage.

IV.

Finally, we turn to the judge's award of fees and costs to Woodbury Medical, premised upon Rule 1:10-3.

We review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard. Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011); see also Innes v. Carrascosa, 391 N.J. Super. 453, 498 (App. Div. 2007). An abuse of discretion occurs when a decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002).

The decision to award counsel fees "rests within the sound discretion of the trial court." Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). We afford trial courts "considerable latitude in resolving fee applications . . . ." Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012). Such "determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

We are satisfied that the judge exercised appropriate discretion with regard to the award of fees and costs to Woodbury Medical for Selective's non-compliance with the court's January 9, 2015 order. Selective's motions to stay were denied, both before the judge and before this court, yet Selective

continuously refused to comply with the orders. While Selective was within its right to seek review of the orders with which it disagreed, in the absence of a stay or reversal, it was not free to ignore those orders.

That stated, the quantum of counsel fees was based on those incurred by Woodbury Medical in the defense of the action as of January 9, 2015. Since we have determined that the award for counsel fees based upon Selective's failure to defend was premature, Woodbury Medical's entitlement to counsel fees is limited to those incurred in prosecuting the motion to enforce litigant's rights. Upon remand, Woodbury Medical may seek reimbursement for those counsel fees and associated costs before the Law Division.

Affirmed in part. Reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5526-15T1