**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4862-18

THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY,

    Plaintiff-Appellant,

v.

RLI INSURANCE COMPANY,
TECHNO CONSULT, INC., and
MICHAEL FIUME,

    Defendants-Respondents,

and

MICHAEL FIUME,

    Defendant.

_____

Argued October 13, 2020 – Decided July 28, 2021

Before Judges Hoffman, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0797-18.

Dinesh U. Dadlani argued the cause for appellant (Segal McCambridge Singer & Mahoney, LTD,

attorneys; Dinesh U. Dadlani and Mailise R. Marks, on the briefs).

John A. Mattoon argued the cause for respondent RLI Insurance Company (Ford Marrin Esposito Witmeyer & Gleser, LLP, attorneys; Joseph D'Ambrosio and John A. Mattoon, on the brief).

William F. Waldron, Jr., argued the cause for respondent Techno Consult, Inc. (Marshall Dennehey Warner Coleman & Goggin, attorneys; William F. Waldron, Jr., of counsel and on the brief; Michael S. Fogler, on the brief).

PER CURIAM

Plaintiff Port Authority of New York and New Jersey appeals from the Law Division order denying its demand for coverage as an additional insured under a comprehensive general liability policy issued to defendant Techno Consult, Inc. (Techno) by defendant RLI Insurance Company (RLI). Plaintiff also seeks reimbursement for its costs in defending the underlying claim and litigation costs in this matter. For the reasons that follow, we affirm.

I.

The underlying action in this matter arises from a work-related injury claim filed by defendant Michael Fiume, an employee of Halmar International (Halmar). In his amended complaint, Fiume alleged that plaintiff and Techno negligently, recklessly, and/or carelessly breached the duty of care to keep the

A-4862-18

premises where his injury occurred in a reasonably safe condition and to make reasonable inspection, maintenance, and repair of the premises.

In September 2012, plaintiff and Port Authority Trans-Hudson Corporation (PATH) contracted with Halmar to perform work on a construction project at the Harrison PATH station. Pursuant to the contract, Halmar was responsible for maintaining and supervising all safety precautions and programs in connection with the construction. The contract required Halmar to create and submit a Site Safety Program assessing potential jobsite hazards and describing how to mitigate such hazards.

On December 12, 2014, plaintiff contracted with Techno (the Techno contract) to perform expert professional construction management and inspection services at all of plaintiff's facilities. The contract required Techno to "immediately inform [plaintiff] of any unsafe condition discovered at any time during the course of this work." The Techno contract also required Techno to defend and indemnify plaintiff for claims arising out of Techno's work and to procure a comprehensive general liability policy (CGL policy) naming plaintiff as an additional insured. Thereafter, RLI issued Techno a CGL policy (the RLI policy) for the period of January 10, 2015 to January 10, 2016.

Fiume sustained his injuries in a slip and fall at the Harrison construction site on April 21, 2015. Fiume alleged that while loading tools on a lift at the construction site, he slipped and fell on wet soil and rocks that were on a slope. Fiume's liability expert opined that Techno failed in its duty to perform construction management and inspection services by not reporting unsafe working conditions.

In a letter dated April 18, 2017, RLI agreed to defend Techno against Fiume's claims. In a letter dated May 4, 2017, plaintiff demanded a defense and indemnification from Techno and RLI, pursuant to the Techno contract. In a letter dated September 15, 2017, RLI responded to this request, denying plaintiff's request for defense and indemnification on the basis that plaintiff did not qualify as an additional insured under the RLI policy because Techno's liability had not been determined; in addition, even if plaintiff qualified as an additional insured, coverage would be denied under the professional services exclusion. Fiume's claims eventually settled.

On February 26, 2018, plaintiff filed a complaint for declaratory judgment against defendants asserting that 1) RLI failed to defend and/or indemnify plaintiff as an additional insured against Fiume's claims in his initial complaint; 2) RLI breached its duties and obligations by refusing to defend and/or

4 <span style="float:right">A-4862-18</span>

indemnify Port Authority; and 3) Techno breached its contractual obligations by failing to obtain an insurance policy naming plaintiff as an additional insured.

One year later, RLI filed a motion for summary judgment, which the trial court denied on April 17, 2019. The matter proceeded to a bench trial on May 13, 2019. The trial judge dismissed plaintiff's complaint with prejudice in an order and letter opinion issued on May 30, 2019, finding that plaintiff was not entitled to coverage as an additional insured as there was "no proof in the record that Fiume's claimed injury was caused in whole or in part by Techno." The court found that there was "limiting language" in the Blanket Additional Insured Endorsement provision; in addition, the Professional Services Exclusion provision of the RLI policy disqualified plaintiff as an additional insured. The court determined that Techno had no duty to indemnify plaintiff for the claims alleged by Fiume "as any injury he sustained did not arise in connection with the performance of Techno's professional services." This appeal followed.

II.

We review questions of contract interpretation de novo, with no special deference to the trial court's interpretation of the agreement. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011). "Well-settled contract law provides that '[c]ourts enforce contracts based on the intent of the parties, the express terms

of the contract, surrounding circumstances and the underlying purpose of the contract.'" Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). We are required "to read the document as a whole in a fair and common sense manner." Ibid. (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)).

"To determine the meaning of a provision in an insurance policy, we first consider the plain meaning of the language at issue." N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 454 (App. Div. 2019) (citing Chubb Custom Ins. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "[W]hen 'the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'" Cypress Point, 226 N.J. at 415 (quoting Manahawkin, 217 N.J. at 118). If the provision is ambiguous, however, we "may look to extrinsic evidence as an aid to interpretation." Ibid. (quoting Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016)).

As a general rule of insurance contracts, "if the controlling language of a policy will support two meanings, one favorable to the insurer and the other to

the insured, the interpretation favoring coverage should be applied." Id. at 416

(quoting Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 575 (1970)).

### III.

Plaintiff argues that it qualifies as an additional insured through the Blanket Additional Insured Endorsement provision in the RLI policy. The provision states, in part:

1. C. WHO IS AN INSURED is amended to include as an additional insured any person or organization that you agree in a contract or agreement requiring insurance to include as an additional insured on this policy but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused in whole or in part by you or those acting on your behalf:

   a. In the performance of your ongoing operations;

   b. In connection with premises owned by or rented to you; or

   c. In connection with "your work" and included within the "product-completed operations hazard[.]"[]

2. The insurance provided to the additional insured by this endorsement is limited as follows:

   a. This insurance does not apply on any basis to any person or organization for which coverage as an additional insured specifically is added by another endorsement to this policy.

7

b. This insurance does not apply to the rendering of or failure to render any "professional services[.]"[]

c. This endorsement does not increase any of the limits of insurance stated in D. Liability And Medical Expenses Limits of Insurance.

The RLI policy defines "your work" as:

"Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Plaintiff asserts that this provision "provides additional insured status to any person or organization with whom the named insured agrees to provide additional insured coverage to in a written contract." Plaintiff argues that because Techno was required by contract to name it as an additional insured

8

under the RLI policy, as evidenced by Section 26(A)(1) of the Techno contract, it is an additional insured, which in turn makes it an insured.

Examining the plain language of the policy, it is clear that in order to trigger coverage for plaintiff as an additional insured under the RLI policy, there must be liability for Fiume's injuries "caused in whole or in part by [Techno] or those acting on [Techno's] behalf." Fiume's claims in the underlying action ended in a settlement. The trial court in this action found that there was "no proof in the record that Fiume's claimed injury was caused in whole or in part by Techno. Absent such a finding, [plaintiff] cannot be deemed to be an additional insured."

Fiume's complaint alleged that plaintiff and Techno negligently, recklessly and/or carelessly breached its duty of care to "keep the premises in a reasonably safe condition and to make reasonable inspection, maintenance and repair of the premises so that members of the general public, including [Fiume], could work at the premises in reasonable safety." Even if we assume that Techno was at fault, plaintiff's claim for coverage still fails based on the provision that appears in Section 2(b), above, which states: "This insurance does not apply to the rendering of or failure to render any 'professional services.'" The application of the Professional Services Exclusion depends on whether Fiume's complaint

alleged a rendering or failure to render any professional services that are included in the RLI policy.

Plaintiff argues that the trial court erred in finding that it was not entitled to coverage as an additional insured by focusing only on the Professional Services Exclusion and by not considering "the actual allegations contained within the Fiume complaint" or defendants' duty to defend. It asserts that the court "created a retrospective illusory contract wherein the [plaintiff] would never receive additional insured coverage through the RLI policy because . . . any liability on behalf of Techno would derive from Professional Services and, therefore be subject to the Professional Services Exclusion."

Plaintiff argues that the duty to defend is triggered by the allegations in Fiume's amended complaint claiming negligence, recklessness and/or carelessness in the breach of the duty of care. In support of this assertion, plaintiff points to the April 18, 2017 letter, wherein RLI informed Techno it would defend Techno against Fiume's allegations that Techno was responsible for the safety of the premises where Fiume sustained injuries.

The duty to defend derives from the language of the policy. Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins., 98 N.J. 18, 22 (1984). "In considering the meaning of an insurance policy, we interpret the language

10

'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins., 128 N.J. 165, 175 (1992)). "If the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Ibid.

Disputes about an insurer's duty to defend are "generally determined by a side-by-side comparison of the policy and the complaint, and [are] triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 453 (App. Div. 2018) (citing Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 340 N.J. Super. 223, 241-42 (App. Div. 2001)). "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Ibid. (quoting Flomerfelt, 202 N.J. at 444).

"The duty to defend is not abrogated by the fact that the claim may have no merit and cannot be maintained against the insured, either in law or in fact, because the cause of action is groundless, false, or fraudulent." Sears Roebuck & Co., 340 N.J. Super. at 241-42. "If the complaint is ambiguous, doubts should

be resolved in favor of the insured and thus in favor of coverage." Voorhees, 128 N.J. at 173-74 (citing Cent. Nat'l Ins. v. Utica Nat'l Ins., 232 N.J. Super. 467, 470 (App. Div. 1989)). The analysis of the allegations is not limited to the complaint itself, but rather "facts outside the complaint may trigger the duty to defend." SL Indus., Inc. v. Am. Motorists Ins., 128 N.J. 188, 198 (1992).

Plaintiff points to the portion of the Blanket Additional Insured Endorsement in the RLI policy that provides for coverage of an additional insured "but only with respect to liability for 'bodily injury' . . . caused in whole or in part by you or those acting on your behalf . . . [i]n the performance of your ongoing operations . . . ." Immediately following this provision, the policy states that "[t]his insurance does not apply to the rendering of or failure to render any 'professional services.'" Plaintiff argues that the court relied only on the Professional Services Exclusion in the RLI policy when it denied coverage to Port Authority as an additional insured. This provision states, in part:

> RLIPack FOR DESIGN PROFESSIONALS PROFESSIONAL SERVICES EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> BUSINESSOWNERS COVERAGE FORM – SECTION II – LIABILITY

A-4862-18

1. Section II B.1.j. Exclusions, Professional Services is deleted and replaced by the following:

   j. Professional Services

   "Bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any "professional services[.]"[]

2. The following is added to Section II F. Liability and Medical Expenses Definitions:

   "Professional services" means any service requiring specialized skill or training including but not limited to the following:

   a. Preparing, approving, or failing to prepare or approve any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, permit application, payment request, manual or instruction;

   b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor, subcontractor or subconsultant;

   c. Monitoring, testing, or sampling service necessary to perform any of the services including in a. or b. above.

   . . . .

13

A-4862-18

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury," involved the rendering or failure to render any "professional services[.]"[]

Plaintiff argues that this exclusion "requires a causal link between the performance of the professional service and the application of the exclusion." It claims that there is "no causal link between all the allegations in the complaint, particularly the Third Count, to warrant the application of the professional services exclusion in rendering a complete denial of coverage rather than a reservation."

"[E]xclusions in insurance policies are presumptively valid and enforceable 'if they are "specific, plain, clear, prominent, and not contrary to public policy."'" Wear, 455 N.J. Super. at 454 (quoting Flomerfelt, 202 N.J. at 441). "[C]ourts will find 'a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Ibid. (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). We narrowly construe exclusions, however, we "must be careful . . . 'not to disregard the "clear import and intent" of a policy's exclusion

A-4862-18

. . . .'"  Ibid. (quoting Flomerfelt, 202 N.J. at 442).  "The insurer has the burden of bringing the case within the exclusion."  Ibid. (citing Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)).  "Far-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." Ibid. (citing Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 105 (App. Div. 1998)).

The RLI policy excludes coverage for "'[b]odily injury,' 'property damage' or 'personal and advertising injury' arising out of the rendering or failure to render any 'professional services[.]'"  "Professional services" is defined as "any service requiring specialized skill or training including but not limited to the following . . . [s]upervision, inspection, . . . engineering or surveying activity or service, job site safety, warning or failure to warn, construction contracting, construction administration, [and] construction management . . . ."

Techno was contracted to perform expert professional construction management and inspection services at all of plaintiff's facilities.  Per the contract, Techno was to perform the following tasks:  construction inspection services, which include services related to structural steel, structural concrete, asphalt and concrete paving, painting of structural steel, electrical, mechanical, and civil; construction contract administration; constructability review; and cost

engineering/estimating.  Techno was also required to "immediately inform [Port Authority] of any unsafe condition discovered at any time . . . ."

The question is whether the complaint alleges negligence claims related to professional services or non-professional services.  Fiume alleged in his complaint that he slipped and fell on wet soil and rocks that were on a slope while he loading tools onto a lift.  The relevant portions of Fiume's underlying complaint, starting with the first count, reads as follows:

> 3. On or about, April 21, 2015, and for some time prior thereto, Defendant(s), The Port Authority of NY & NJ, Techno Consult, Inc., . . . were actively engaged as owners, developers, project managers, site supervisor, general contractors, sub-contractors and/or contractors at the subject premises and subject work site mentioned above and were responsible for the control, <u>supervision</u>, maintenance, <u>design</u>, implementation, procurement and hiring of subcontractors, <u>inspection of premises</u> and charged with the responsibility of <u>implementing and regulating safety procedures</u> for the premises and the construction project at the subject premises and all that entailed.
>
> 4. Defendant(s), The Port Authority of NY & NJ, Techno Consult, Inc., . . . warranted, either expressly or implicitly, to the public, the contractors and sub-contractors and their employees and more particularly, to Plaintiff, Michael Fiume, that the subject construction project and the premises would be operated, controlled, <u>managed</u>, maintained, <u>inspected and supervised</u> in a safe and reasonable manner so that the premises, construction area

16

would be <u>safe and secure</u> for the construction activities conducted thereon.

5. Defendants, The Port Authority of NY & NJ, Techno Consult, Inc., . . . did breach said warranties in that the aforesaid premises was extremely dangerous and unreasonably unsafe in that improper safety features were implemented, <u>construction</u>, <u>inspection</u> and permitted on the site and the construction site and activities were not reasonably <u>safe</u> or fit for the activities occurring there, and were further defective and unsafe in that the <u>premises contained no reasonably adequate safeguards or warnings regarding the risks and hazards involved in its operations</u> and all of the above unreasonably dangerous conditions existed at the time said construction began at the above mentioned premises by and through said Defendant(s), and the actions of their employees, . . . individually, jointly and/or in concert with each other and existed on April 21, 2015.

. . . .

7. Due to the carelessness, recklessness and/or negligence of the Defendant(s), The Port Authority of NY & NJ, Techno Consult, Inc., . . . Plaintiff, Michael Fiume, in the scope of his employment was loading a man lift basket with his tools, Plaintiff slipped and fell on soft and wet soil and rocks that was on a slope and sustained serious personal injuries.

[(emphasis added).]

The relevant allegations contained in the second count are:

4. At the time and place aforesaid, Defendant(s), The Port Authority of NY & NJ, Techno Consult, Inc., . . . owed a duty to the Plaintiff and to members of the general public to keep the premises in a <u>reasonably safe condition and to make reasonable inspection</u>, maintenance and repair of the premises so that members of the general public, including the Plaintiff, could work at the premises in reasonable safety.

5. At the time and place aforesaid the Defendant(s), The Port Authority of NY & NJ, Techno Consult, Inc., . . . did breach the aforesaid duty of care and were negligent and careless in allowing and/or permitting a dangerous, hazardous and nuisance-like condition to exist for an unreasonable period of time in the premises, namely, soft and wet soil and rocks.

[(emphasis added).]

Reading the underlying complaint alongside the RLI policy, the allegations fall in line with the language of the Professional Services Exclusion. The relevant services included in the Professional Services Exclusion are supervision, inspection, job site safety, warning or failure to warn, construction administration and construction management. The underlying complaint contains allegations of negligence on the part of plaintiff and Techno with respect to "supervision," "inspection of the premises," "implementing and regulating safety procedures," management, and failure to warn. Because the professional services listed in the Professional Services Exclusion are alleged

18

by Fiume in the underlying complaint, the exclusion applies, barring coverage for plaintiff as an additional insured under the CGL policy and thus, RLI did not have a duty to defend.

Plaintiff asserts that if RLI's arguments are taken as true, it would be left with "near illusory coverage" under the RLI policy as an additional insured. It argues that "pursuant to the Separation of Insureds clause, RLI was obligated to evaluate its duty to defend [plaintiff] separately from the duty to defend Techno, including the applicability of any exclusions." The Separation of Insureds clause states:

> Except with respect to the Limits of Insurance of SECTION II – LIABILITY, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

Plaintiff cites to an out-of-state case from the Northern District of Illinois, U.S. Fid. & Guar. Co. v. Shorenstein Realty Servs., L.P., 700 F. Supp. 2d 1003, 1011 (N.D. Ill. 2010), to support its position that RLI is obligated to evaluate its duty to defend Port Authority, as well as the applicability of the Professional Service Exclusion, separately from Techno. In a declaratory judgment action

19

arising from a fatal accident at a restoration project, the district court reviewed the policy's separation of insureds provision alongside the professional services exclusion and concluded that the separation of insureds provision "must be interpreted as requiring that the coverage of each insured or additional insured be determined separately from other insureds. . . . [T]he professional services exclusion must be applied vis a vis [the additional insured's] own conduct." Shorenstein, 700 F. Supp. 2d at 1014-15. Applying this interpretation, the district court found that the additional assured would remain covered despite the professional services exclusion because it did not perform professional services on the project at issue. Id. at 1015.

While Shorenstein is factually similar to the case under review, the underlying complaint in Shorenstein differs in a significant respect. The additional insured in Shorenstein was not alleged to have performed professional services and the underlying claim alleged causes of action different from that of the insured. Id. at 1010. In this matter, Fiume's underlying claim did not differentiate between plaintiff and Techno.

Contrary to plaintiff's argument that it is neither alleged nor is there evidence of plaintiff performing professional services at the project, Fiume's allegations of negligence with respect to "supervision," "inspection of the

A-4862-18

premises," "implementing and regulating safety procedures," management, and failure to warn were made against both plaintiff and Techno. Even if we separately evaluate plaintiff's conduct under the Professional Services Exclusion, plaintiff still would not qualify for coverage because the underlying complaint alleges negligent conduct involving professional services that are excluded under the Professional Services Exclusion.

Fiume's allegations were that Techno was liable for a failure to inspect and alert about a slippery condition at the property. Plaintiff could not be an additional insured, however, because the alleged liability had to be caused in whole or part by Techno as part of its work, but under the policy, the work did not include professional services. Therefore, plaintiff was not an additional insured because the allegations involved professional services.

Alternatively, plaintiff asserts that, based on RLI's "improper denial" of its tender, RLI should be ordered to reimburse Port Authority for its costs in defending the underlying matter as well as the costs for pursuing coverage. If "an insurer believes that the evidence indicates that the claim is not covered, the insurer is not always required to provide a defense." Wear, 455 N.J. Super. at 456. (quoting Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 274 (App Div. 2008)). If an insurer decides that it will not provide a defense

for a claim, its "obligation to defend becomes an obligation to reimburse for defense costs to the extent that the defense is later determined to have been attributable to the covered claims and, if coverage is not determinable in the underlying action, it is later determined that there was in fact coverage." Wear, 455 N.J. Super. at 455-56 (quoting Muralo Co. v. Emp'rs Ins. of Wausau, 334 N.J. Super. 282, 289-90 (App. Div. 2000)). "Although the duty to defend is broader than the duty to pay, the duty 'is not broader in the sense that it extends to claims not covered by the covenant to pay.'" Id. at 456 (quoting Grand Cove II Condo. Ass'n v. Ginsberg, 291 N.J. Super. 58, 72 (App. Div. 1996)). Since we find the claims in the underlying complaint fall under the services listed in the Professional Services Exclusion, RLI is under no duty to reimburse as there is no coverage under the policy.

For any claims in the underlying complaint against plaintiff and Techno that fall under the services listed in the Professional Services Exclusion, RLI was under no duty to reimburse since there is no coverage under the policy. For any claims not barred under the Professional Services Exclusion, plaintiff needed to show that, pursuant to the Blanket Additional Insured Endorsement, that liability for Fiume's injuries was "caused in whole or in part by" Techno in

22

the performance of their operations. The trial judge correctly rejected plaintiff's claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4862-18