**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3551-20

CAPRI HOLDINGS LIMITED,
a British Virgin Islands
Corporation,

      Plaintiff-Appellant,

v.

ZURICH AMERICAN
INSURANCE COMPANY,
a New York Corporation,
XL INSURANCE AMERICA,
INC., a Delaware Corporation,
MITSUI SUMITOMO
INSURANCE COMPANY OF
AMERICA, a New York
Corporation, LIBERTY
MUTUAL FIRE INSURANCE
COMPANY, a Wisconsin
Corporation, ALLIANZ
GLOBAL CORPORATE AND
SPECIALTY SE, a German
Corporation, and AIG
SPECIALTY INSURANCE
COMPANY, an Illinois
Corporation,

      Defendants-Respondents.

_____

Argued February 15, 2023 – Decided December 18, 2023

Before Judges Accurso, Vernoia, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2322-21.

Joseph D. Jean (Pillsbury Winthrop Shaw Pittman, LLP) argued the cause for appellant (Joseph D. Jeann, Janine M. Stanisz (Pillsbury Winthrop Shaw Pittman, LLP), and Scott D. Greenspan (Pillsbury Winthrop Shaw Pittman, LLP) of the New York and District of Columbia bars, admitted pro hac vice, attorneys; Joseph D. Jean, Scott D. Greenspan, and Janine M. Stanisz, on the briefs).

Charles A. Booth (Ford Marrin Esposito Witmeyer & Gleser, LLP) argued the cause for respondent Zurich American Insurance Company (Charles A. Booth, John A. Mattoon, Jr., Michael L. Anania (Ford Marrin Esposito Witmeyer & Gleser, LLP) of the New York bar, admitted pro hac vice, and Squire Patton Boggs (US) LLP, attorneys; Charles A. Booth, Michael L. Anania, John A. Mattoon, Jr., and Lauren S. Kuley (Squire Patton Boggs (US) LLP) of the New York and Ohio bars, admitted pro hac vice, on the briefs).

Clyde & Co US LLP, Finazzo Cossolini O'Leary Meola & Hager LLC, Dentons US LLP, Alexander Cogbill (Zelle LLP), and Dan Millea (Zelle LLP) of the Minnesota bar, admitted pro hac vice, attorneys for respondents Allianz Global Corporate & Specialty, SE, XL Insurance America, Inc., Liberty Mutual Fire Insurance Company, and AIG Specialty Insurance Company join in the brief of respondent Zurich American Insurance Company.

Michael J. Quirk (Motley Rice LLC) of the Pennsylvania, District of Columbia, and New York bars, admitted pro hac vice, argued the cause for amicus curiae New Jersey Association for Justice (Motley Rice LLC, attorneys; Esther Berezofsky, on the brief).

Reed Smith, LLP, Kevin V. Small (Hunton Andrews Kurth, LLP), and Lorelie S. Masters (Hunton Andrews Kurth, LLP) of the District of Columbia bar, admitted pro hac vice, attorneys for amicus curiae United Policyholders (Lorelie S. Masters and Kevin V. Small, on the brief).

Daniel E. Bryer (Robinson & Cole, LLP), attorney for amicus curiae Insurance Council of New Jersey and American Property Casualty Insurance Association.

The opinion of the court was delivered by

FIRKO, J.A.D.

In this insurance coverage dispute based on claims arising out of the COVID-19 pandemic and the Executive Orders (EO or EOs) issued in response to the pandemic, plaintiff Capri Holdings Limited (Capri) appeals from five orders entered on June 25, 2021, dismissing its 104-page third amended complaint for declaratory relief with prejudice against defendants Zurich American Insurance Company (Zurich), XL Insurance America, Inc. (XL), Liberty Mutual Fire Insurance Company (Liberty), Allianz Global Corporate and Specialty SE (Allianz), and AIG Specialty Insurance Company (AIG) (collectively defendants).

A-3551-20

Capri sought a declaration that defendants should pay the lost business income and extra expenses it incurred while its stores were closed and later reopened with restrictions on use, contending defendants breached their policies by denying coverage.

Capri argued it suffered a direct physical loss of damage to its properties, triggering coverage under the Property Damage, Time Element, and Special Coverages & Described Causes of Loss (the "Civil or Military," "Contingent Time Element," and "Protection and Preservation of Property" provisions) sections of its policies. Capri also contended the Contamination Exclusion provisions in its Policies do not apply and are violative of New Jersey public policy. After the trial court rejected those arguments, we considered and rejected the same arguments as applied to almost identical insurance policies. See Mac Prop. Grp., LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1 (App. Div.) cert. denied, 252 N.J. 258 (2022).

We granted leave to United Policyholders and the New Jersey Association for Justice to file amici curiae briefs, which support Capri's contentions. We also granted leave to the Insurance Council of New Jersey and American Property Casualty Insurance Association to file amici curiae briefs, which support defendants' contentions. Because our holdings and reasonings in Mac

Property apply to Capri's policies, we affirm the order dismissing Capri's third amended complaint with prejudice.

I.

We glean the facts from the third amended complaint. Capri is a luxury fashion retailer and owner of Versace, Jimmy Choo, and Michael Kors. Capri is a corporation formed under the laws of the British Virgin Islands having principal executive offices in the United Kingdom. As of March 2020, Capri operated 1,271 stores located in thirty-five countries. Capri maintains a corporate office, three warehouses, and operates eighteen stores in New Jersey. It employs approximately 587 individuals in this state and 17,000 individuals worldwide.

Capri purchased a high-end All Risk Commercial Insurance Policy with defendant Zurich for the policy period March 14, 2019, to March 14, 2020. The following year, Zurich sold Capri the same All Risk Commercial Insurance Policy, but this time issued the policy as part of a quota share program.[1] The

---

[1] A "quota share program" is a type of reinsurance where the reinsurer and ceding insurer enter a contract to share a prearranged proportionate percentage of any loss sustained on the insured property. See 7 Daniel W. Gerber et al., New Appleman on Insurance Law Library Edition § 71.02[4][a] (2023 ed.); Cent. Nat'l Inc. Co. v. Devonshire Coverage Corp., 426 F. Supp. 7, 11 n.5 (D. Neb. 1976).

Policy covering the period from March 14, 2020, to March 14, 2021, with a $250,000,000 dollar limit, is shared by and among Zurich, XL, Liberty Allianz, and AIG.[2]

The two policies are identical in certain material respects. Under the provision entitled "Insuring Agreement," both policies insure "against direct physical loss of or damage caused by a **Covered Cause of Loss**[3] to Covered Property, at an Insured Location," unless the loss was excluded or limited under the policies. The Covered Property provisions in each Policy provides for the cost or repair of covered "buildings (or structures) including new construction, additions, alterations, and repairs that the Insured owns, occupies, leases, or rents." The Property Damage coverage pertains to Capri's interest in buildings, personal property, and property of others in Capri's custody and control.

Among the exclusions in the Policies is one for contamination. The Contamination Exclusion denies coverage for contamination and costs due to

---

[2] Defendant Mitsui Sumitomo Insurance Company of America (Mitsui) also shared in the remaining limits under the 2020/2021 policy. On August 30, 2021, Capri and Mitsui entered into a stipulation of dismissal. Capri and Mitsui agreed to suspend and toll for two years any applicable statutes of limitations, statutes of repose, and time-bar defenses that they may have against the other party relative to this litigation.

[3] Emphasis in bold is in the original.

A-3551-20

contamination, "including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." The policies define "contamination" as "any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew."

Central to this appeal are Capri's coverage claims for lost income. The "Time Element" coverage provision provides that defendants will pay for losses resulting from the necessary suspension of Capri's business activities at an insured location. But the Time Element loss "must be due to direct physical loss of or damage to Property . . . caused by a **Covered Cause of Loss** at the **Location**." "Period of Liability" applies to all Time Element Coverages, which "start[s] from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage."

The Time Element coverage provision applies to property leased to Capri if the building becomes "untenantable or unusable" in whole or in part or the lessor cancels the lease. In addition, the Time Element coverage includes an

7

"Extra Expense" provision for additional amounts spent by Capri to resume and continue business activities "over and above" its normal expenses due to direct physical loss of or damage to the property.

In relevant part, three "Special Coverages" in the subject Policies apply to lost income. First, Special Coverage exists based on "Civil or Military Authority" when:

> the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations.

Second, there is a "Contingent Time Element" provision, which states the policies cover losses resulting from "the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to Property (of the type insurable under this Policy)."

And lastly, Special Coverage extends to the "Protection and Preservation of Property," constituting "[t]he reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such

8

actions are necessary due to actual or imminent physical loss or damage due to a **Covered Cause of Loss** to such Covered Property." The policies also cover "[t]he Gross Earnings loss or Gross Profit loss sustained by the Insured . . . after the Insured first t[ook] reasonable action for the temporary protection and preservation of Covered Property."

Beginning in early March 2020, Governor Murphy issued a series of EOs to address the COVID-19 pandemic. EO 103, issued on March 9, 2020, declared a public health emergency and state of emergency in New Jersey. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (April 6, 2020). EO 104, issued on March 16, 2020, among other things, limited the scope and hours of operation for non-essential business operations, including retail. Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020). EO 107, which became effective March 21, 2020, implemented "social mitigation strategies" requiring "every effort to reduce the rate of community spread of the disease." Exec. Order No. 107 (Mar. 21, 2020) 52 N.J.R. 554(a) (Apr. 6, 2020).

The third amended complaint alleges that as a result of the COVID-19 pandemic, Capri was forced to close its stores across New Jersey and around the world. Capri alleges it suffered a substantial loss of income and business—over one billion dollars globally—when the EOs were in effect. According to Capri's

9

third amended complaint, over 900 of its employees tested positive for COVID-19, demonstrating the compelling presence of COVID-19 in its stores, in the air, and on surfaces, indicating the transmission of the virus on its physical properties. Capri alleged in its third amended complaint that a combination of the foot traffic in its stores and positivity rates in the area of the "three operating stores" proves it is "statistically certain" or "near certain" that customers and individuals who visited its stores carried the Coronavirus.

Capri alleged the "risk of Coronavirus transmission" could not "be completely removed with routine surface cleaning" because "no amount of routine surface cleaning could remove the aerosolized Coronavirus suspended in the air" in its stores. Thus, Capri alleged "the presence of the Coronavirus in and on its properties, including in indoor air, on surfaces, and on objects, caused direct physical loss of or damage to property by causing physical harm to and altering property and otherwise making it incapable of being used for its intended purpose." Capri also alleged its argument is supported by EO 157, which permitted stores to re-open in a limited fashion and addressed COVID-19's impact upon property, such as by mandating sanitization and cleaning procedures.

A-3551-20

However, defendants declined coverage because they alleged the policies did not cover the COVID-19 related losses. In addition, defendants alleged coverage was barred by the policies' Contamination Exclusions.

In response, Capri brought a lawsuit against defendants in the Chancery Division, including nine counts for declaratory judgment and two counts for breach of contract. Zurich moved to transfer the action to the Law Division, which was granted. Capri filed a third amended complaint, which is the subject of the orders under review, alleging the presence of COVID-19 rendered its stores unusable and uninhabitable for several months.

Defendants moved to dismiss under Rule 4:6-2(e), arguing the plain language of the policies do not provide coverage for the losses at issue. Capri opposed defendants' motions, arguing that by alleging the temporary loss of its stores due to "physical contamination" it asserted legally cognizable claims for coverage under the policies such that it satisfied the pleading standard. Following argument, the trial court granted the motions in an oral opinion and dismissed Capri's third amended complaint with prejudice, finding Capri did not plead claims upon which relief may be granted because there was no direct physical loss of or damage to Capri's property entitling it to coverage under the

11

policies, and the virus exclusion otherwise excluded coverage for its claimed losses.

The court found physical damage, as defined by case law, can only exist as a result of contamination when the contamination rendered the premises "useless or [un]inhabitable." Even accepting the allegations of the third amended complaint as true, the court determined Capri did not allege "structural alteration" to property or "physical contamination so severe as to render the property totally inhabitable or unusable" as required by the terms of the subject policies. The court emphasized the third amended complaint "does not allege structural alteration or any need for repair of the physical premises."

The court found Capri's stores were "usable" with "proper cleaning protocols and mask wearing." The court noted it was "undisputed there were proper safety precautions, and the property was functional and useful." In addition, the court held Capri did not allege that "any physical force had . . . altered the physical condition of the property" and did not allege there existed "severe physical contamination as to render the property unusable." The court found there were no ambiguities in the policies, and Capri failed to allege the Coronavirus "caused a direct physical loss or damage, which is a prerequisite to coverage in this matter."

II.

Our review of a <u>Rule</u> 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted is de novo. <u>Baskin v. P.C. Richard & Son, LLC</u>, 246 N.J. 157, 171 (2021) (citing <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.</u>, 237 N.J. 91, 108 (2019)). We "must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" <u>Ibid.</u> (quoting <u>Dimitrakopoulos</u>, 237 N.J. at 107). To determine the adequacy of a pleading, we must decide "whether a cause of action is 'suggested' by the facts." <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989) (quoting <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 N.J. 189, 192 (1988)).

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" <u>Pizzullo v. N.J. Mfrs. Ins. Co.</u>, 196 N.J. 251, 270 (2008) (quoting <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 595 (2001)). The policy must "be enforced as written when its terms are clear" so the "expectations of the parties will be fulfilled." <u>Flomerfelt v. Cardiello</u>, 202 N.J. 432, 441 (2010) (citations omitted).

If an insurance policy is ambiguous, courts will construe the terms in favor of the insured.  Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. at 18 (citation omitted).  This doctrine only applies if there is a genuine ambiguity in the contract, and "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274 (2001)).

"Exclusions in insurance contracts 'are presumptively valid and will be given effect if [they are] "specific, plain, clear, prominent, and not contrary to public policy."'"  Mac Property, 473 N.J. Super. at 35 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)).  Further, exclusionary provisions "containing 'an anti-concurrent or anti-sequential clause' ha[ve] been interpreted to unambiguously bar coverage for losses resulting in any manner from an excluded cause."  Id. at 37 (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 454-55 (App. Div. 2018)).  "Thus, coverage is excluded for a loss attributable to a given cause 'regardless of whether any other cause, event, material or product contributed concurrently or in any sequence' to that loss." Ibid. (quoting Wear, 455 N.J. Super. at 454).

Capri argues it suffered a covered loss or damage because of the Governor's EOs mandating business closures during the COVID-19 pandemic. Capri contends the limitations imposed by the EOs resulted in physical loss or damage to its properties. Capri argues the phrase "physical loss of or damage to" found in the policies is ambiguous and should be interpreted in favor of coverage under our jurisprudence. We are not persuaded.

Capri's arguments are virtually identical to those of the claimants in Mac Property. In Mac Property, several plaintiffs sought declaratory judgments enforcing Business Income and Civil Authority provisions to cover losses they incurred during the COVID-19 pandemic after being forced to shut down or restrict their operations. 473 N.J. Super. at 9-10. We rejected their claim, holding the term "direct physical loss of or damage to" was "not so confusing that average policyholders . . . could not understand that coverage extended only to instances where the insured property has suffered a detrimental physical alteration . . . or there was a physical loss of the insured property." Id. at 21-22. We concluded the motion courts appropriately dismissed the plaintiffs' complaints with prejudice under Rule 4:6-2(e). Id. at 40.

In reaching that determination, we noted there were "scores of federal and state appellate-level courts that . . . addressed" the issues raised by the plaintiffs and [t]he overwhelming majority of them . . . granted defendant insurers' motions to dismiss complaints seeking insurance coverage for business losses due to government orders barring or curtailing [the insureds'] operations . . . to curb the . . . pandemic because the losses were not due to physical loss or damage to their insured premises. [Id. at 26-27.]

While New Jersey has "adopted a broad notion of the term 'physical'" when the word is paired with another term, such as "physical injury," the resulting phrase means "'detrimental alteration,' or 'damage or harm to the physical condition of a thing.'" Id. at 20 (alteration in original) (quoting Phibro Animal Health Corp. v. Nat'l Union of Fire Ins. Co., 446 N.J. Super. 419, 437-38 (App. Div. 2016)). In Mac Property, we found it significant there was no damage to any of the equipment or property of the businesses. Id. at 23. Specifically, none of the plaintiffs alleged COVID-19 was present on their properties, rendering them uninhabitable. Ibid. Instead, their losses were due to "reductions imposed by [EOs] to curb the COVID-19 pandemic." Id. at 41.

Citing Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1277 (Mass. 2022), we noted the distinction between "loss" and "damage" argued by

the claimants in that case was "irrelevant . . . because the contention 'ignored' the fact that the relevant coverage provisions provided that the 'loss itself must be a 'direct physical' loss, clearly requiring a direct, physical deprivation of possession.'" Mac Property, 473 N.J. Super. at 26 (alteration in original).  We adopt the same rationale here.

Like the plaintiffs in Mac Property, Capri did not allege facts establishing it lost its physical capacity to operate or that its properties required any repairs, rebuilding, or replacement due to damage.  Further, Capri does not allege there was physical alteration of the properties making them dangerous to enter.  Capri does not allege its premises were contaminated by COVID-19.  As we noted in Mac Property, the policy's definition of restoration period as the time required to rebuild, repair, or replace the property would be meaningless if the insured were permitted to recover for purely economic losses under this provision.  473 N.J. Super. at 23.  Therefore, defendants were not required to provide coverage under the Property Damage, Time Element, and Extra Expense provisions of the policies as there was no "directly physical loss or damage."

While we did not specifically address the language in the plaintiffs' Extra Expense provision in Mac Property, 473 N.J. Super. at 22, the coverage is inapplicable here for two reasons.  First, the Extra Expense provision also

17

requires a "direct physical loss of or damage to property," which as noted did not occur here, and includes the same reference to coverage during restoration periods that we found pertinent in Mac Property, 473 N.J. Super. at 23. Second, our analysis in Mac Property relied, in part, on a Massachusetts Supreme Court case, which examined similar Business Income and Extra Expense provisions and determined that coverage was not triggered because there was no physical loss or damage to the plaintiffs' properties. Id. at 25-27.

For the reasons described above, Capri has not alleged, and cannot allege, physical loss or damage to its property based on the EOs or the COVID-19 virus such that it is entitled to coverage under the policies. We conclude Mac Property's analysis is controlling, and thus coverage was not properly extended under the Extra Expense provision. Therefore, Capri cannot recover under the Property Damage and Extra Expense provisions of defendants' policies.

We also considered the Civil Authority provision in Mac Property in light of Governor Murphy's EOs. Id. at 27-30. In Mac Property, plaintiffs' policies provided the defendants would "pay for the actual loss of Business Income" sustained by the plaintiffs "caused by action of civil authority that prohibit[ed] access to" its premises. Id. at 27. In order for the Civil Authority coverage to be triggered, plaintiffs were required to show:

(1) damage . . . done to other property within a certain distance of the insured premises; (2) this damage resulted from a "Covered Cause of Loss"; (3) the civil authority prohibited access to the insured premises because of the damage; and (4) the civil authority's action was taken in response to dangerous physical conditions resulting from the damage or the continuation of the covered cause of loss or to ensure civil authority's unimpeded access to the damaged area.

[Ibid.]

We considered the plain and unambiguous language contained in this provision—and decisions from sister states—and determined the trial courts correctly concluded that the provision did not extend coverage because the EOs did not prohibit access to the premises or limit the owners from accessing their properties. Ibid. Rather, the EOs only "restricted [the plaintiffs'] business activities." Ibid. We also reasoned the Civil Authority provision did not extend coverage because the plaintiffs' businesses were all closed to the public; and none were selectively closed due to damage from a nearby property. Ibid.

Here, Capri fails to present any argument to justify a deviation from our conclusion in Mac Property. Capri's policies contain language identical to the provisions at issue in Mac Property, requiring that "the civil authority prohibited access to the insured premises." Ibid. (emphasis added). The EOs did not prohibit access to Capri's properties, and Capri does not allege that they did.

Capri does not allege the quantum of COVID-19 in any of its stores was elevated to the point it prevented human occupancy. And, the EOs affected all businesses statewide, and did not specifically target any of Capri's properties.

Moreover, the Contamination Exclusion provisions in defendants' policies are unambiguous and preclude the coverage that Capri is seeking. As we explained in Mac Property, "it is unequivocal that the virus was the sole reason the [EOs] were issued." Id. at 40. The policies, like some of those in Mac Property, contained a Contamination Exclusion, which contains a virus exclusion provision "that included anti-concurrent and anti-sequential causation language, undoubtedly barring coverage" because the COVID-19 virus allegedly contributed to plaintiffs' business losses. See ibid.

We conclude Capri's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION