**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3643-20

PINNACLE CONTROL
SYSTEMS, LLC, a New Jersey
Limited Liability Company,

     Plaintiff-Respondent,

v.

LARRY HERMAN, and
REDLINE CONTROL
DESIGN, LLC, a New Jersey
Limited Liability Company,

     Defendants-Appellants.

_____

Argued August 30, 2022 – Decided September 6, 2022

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000031-21.

Eugene Song argued the cause for appellants.

Jill R. Cohen argued the cause for respondent (Eckert Seamans Cherin & Mellott, LLC, attorneys; Robert P. Avolio and Jill R. Cohen, of counsel and on the brief).

PER CURIAM

Defendants Larry Herman and Redline Control Design, LLC (Redline) appeal from an August 12, 2021 order of the Chancery Division finding them in contempt for violating non-competition restraints in the March 25, 2021 and April 28, 2021 orders. We affirm.

Plaintiff Pinnacle Control Systems, LLC (Pinnacle) is a provider of energy services for buildings of all types and sizes "with a focus on comprehensive control of equipment and reducing total building energy consumption, including refrigeration, heating, ventilating, air-conditioning, lighting and all energy consuming systems found in commercial, industrial, and educational facilities." Plaintiff's services include: "[c]omplete [e]nergy [m]anagement for all facility types; fully licensed and insured electrical contractor for installation and service; [c]omprehensive certified level [one], [two], [and three] energy audits; [e]ngineering and [d]esign for customer building needs; [twenty-four-hour] control system monitoring; and [photovoltaic] [s]olar and installation service." The firm participates in a competitive market comprised of a small number of providers.

Defendant Herman is a highly skilled technician in this field who specializes in starting and installing energy control systems (EMS), programming, and functional testing.  He was hired by plaintiff on May 1, 2017 for the senior-level position of Operations Manager.  Defendant's annual salary was $245,924 plus a bonus.  Prior to working for plaintiff, defendant worked in the supermarket and construction industries as an EMS contractor and consultant for over thirty-six years.  During that time, he developed a wide range of contacts consisting of contractors, vendors, and suppliers in the supermarket industry.  Some of defendant's clients followed him to Pinnacle.  While at Pinnacle, defendant's job responsibilities included: overseeing sales, installation, services and administration; bidding and project management for incoming work; overseeing and scheduling all field work; assisting with technical and design issues; communicating with customers; overseeing office administration; working and technical interfacing with third-party vendors; providing IT support and direction; working with owners on new company technology; purchasing materials and maintaining inventory; and reviewing sales, profits, and losses.

After defendant allegedly "failed to meet his essential job functions," plaintiff terminated him on December 30, 2020.  Prior to the termination,

3

plaintiff learned that defendant was converting company property for his personal use and making improper personal charges on his company credit card that included flowers for his wife's birthday and anniversary, the rehearsal dinner for his son's wedding, and expensive personal dining charges that were not business related.

On December 30, 2020, plaintiff offered defendant a Separation Agreement and General Release (the agreement). Relevant to this appeal, the agreement contained a twelve month non-compete provision, prohibiting defendant in paragraph (a) from contributing his "knowledge, directly or indirectly, in whole or part, as an employee, employer, owner, operator . . . or any other similar capacity to an entity engaged in the same or similar business as [plaintiff,]" and in paragraph (c) from engaging in any activity "whether directly or indirectly to solicit, contact, or attempt to solicit or contact, using any other form of oral, written, or electronic communication, . . . or meet with [plaintiff]'s current, former, or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by [plaintiff.]"

Pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(f)(1)(F)-(G), defendant was advised that he had up to twenty-one days to

4

consider the agreement and that he could revoke it for a period of seven days after signing. Revocation instructions were included on pages six and seven of the agreement. Defendant elected to waive the twenty-one-day period and signed the agreement on December 30, 2020.

On December 31, 2020, defendant sent a letter to plaintiff in an effort to alter the terms of the agreement and narrow the scope of the post-employment restrictive covenants. Notably, this letter was not drafted in the manner designated to revoke the agreement. Instead, defendant explained that he wanted "to have an amicable separation and therefore request[ed] modification to [s]ection [eight] in general, and in specific paragraphs 'a' and 'c' which are quite draconian and overly broad." He also proposed substitution of certain language and said that he would "leave it to [plaintiff] to correct the language[.]" In a follow-up email, defendant stated "we need to discuss the changes I proposed. I believe that they are not so overly broad as to restrict me from anything (like is currently written) but will still alleviate your concerns about me getting a job where I would be competing directly with Pinnacle."

Between January 7, 2021 and March 4, 2021, the parties communicated through counsel to negotiate revised terms. During this time, plaintiff's counsel held defendant's severance money in escrow. The parties could not come to

5

revised terms for the agreement and therefore plaintiff has not released the severance.

Since 2013, prior to his employment with plaintiff, defendant maintained a close business relationship with R3 Retail Development (R3) which is an "[e]ngineering and [i]ntegrating company that develops the design of HVAC and lighting controls at various construction project sites." The firm also "prepare[s] the installation plans and specifications, purchase[s] and [starts up] the HVAC and lighting controls equipment, and also program[s] and commission[s] them for operation."

Defendant previously worked with R3 as a subcontractor at a series of Trader Joe's sites performing EMS commissioning and programming work. R3 would directly contract with defendant "by way of purchase order . . . to perform commissioning and programming work" for the firm. The owner of R3 explained that it is not a customer of plaintiff's and noted that "Pinnacle does not have the capacity to perform the work that only Larry Herman can do and that I trust." He further explained that "[t]here are only [three] fully vetted and specially trained persons throughout the country that perform EMS start ups, programming and functional testing; and Larry is the only one residing in the

A-3643-20

Northeast that I use. If Pinnacle did not have Larry Herman, I would have looked elsewhere for the job."

On or about April 30, 2020, R3 issued purchase order #5177i to plaintiff. The purchase order was for plaintiff to perform EMS work at a Trader Joe's in Long Island City, New York. R3 also issued a second purchase order to plaintiff for EMS work at a Trader Joe's in Christiana, Delaware. The onset of the pandemic delayed this work until 2021, and work for these purchase orders was not completed prior to defendant's termination.

In January 2021, Pinnacle contacted R3 about the status of the two purchase orders. Once R3 learned that defendant was no longer employed by plaintiff, R3 informed plaintiff that the purchase orders had expired due to delays and stated that it would perform the contracted work "in-house." Between January and February 2021, R3 contacted defendant to confirm that he no longer worked for plaintiff. After defendant confirmed that he had been terminated, R3 asked if he would be able to commission both jobs. Defendant agreed to do the commissioning in February 2021.

After being terminated by plaintiff, defendant created Redline. He incorporated the firm on January 27, 2021, less than one month after signing the agreement. Plaintiff concedes that neither the agreement nor the subsequent

7

negotiations regarding potential modifications to the agreement stopped defendant from forming Redline. Defendant proceeded to advertise his new venture on LinkedIn. Additionally, he reportedly visited and contacted two of plaintiff's customers—LiDL grocery stores in Lawrenceville and Garwood, New Jersey—to introduce and discuss his new company in violation of the agreement. Defendant also reportedly did not return a company laptop that belonged to plaintiff.

Based on these violations, on March 24, 2021, plaintiff filed its verified complaint and order to show cause seeking temporary restraints because of defendant's violation of the post-employment restrictive covenants and refusal to return company property. The next day, the Chancery Division entered an order imposing temporary restraints, and scheduled the show cause hearing for April 28, 2021.

On April 9, 2021, defendant was observed performing EMS work at the Trader Joe's location in Christiana, Delaware. As a result of this newly discovered violation, plaintiff filed its first motion for contempt on April 27, 2021.

On April 28, 2021, the parties appeared for the show cause hearing. At the conclusion of the show cause hearing, the court continued the temporary

A-3643-20

restraints entered in the March 25, 2021 order pending full and final disposition of the matter by order dated April 29, 2021. The judge ordered that defendant was restrained from "doing business with any supermarket, box store or other customer or client for which Pinnacle has done business or developed a prospective business relationship with at any time through . . . December 30 [], 2020."

On May 14, 2021, the court conducted the hearing on the first contempt motion and reserved its ruling. On or about May 17, 2021, plaintiff inadvertently received emails intended for defendant that were sent to his old Pinnacle email address. Plaintiff owns its own email server which includes defendant's former work email account. When defendant was terminated, plaintiff asked its employee Steve Green "to periodically monitor [defendant's] email in-box . . . to ensure continuity of service to Pinnacle's customers who may not know that [defendant]'s employment had been terminated." The context of the email chain made it "evident that [defendant] was performing work that was the subject of . . . the [R3] [p]urchase [o]rder" for the Trader Joe's in Long Island City, New York in violation of the Chancery Division's restraints.

In light of this discovery, plaintiff returned to court and filed its second motion for contempt on May 21, 2021. The hearing on the motion occurred on July 14, 2021, and the court once again reserved its ruling.

On August 12, 2021, the court granted both of plaintiff's contempt motions and ordered defendant to produce certain discovery and appear for deposition. On August 16, 2021, defendant filed a notice of appeal of the contempt order and moved to stay the case pending appeal. By order dated September 13, 2021, the court denied defendant's motion to stay the case pending appeal. We denied defendant's emergent motion to stay on September 27, 2021. Defendant now appeals the August 12, 2021 order finding him in contempt of the restraints imposed in the Chancery Division's March 25 and April 29 orders.

On appeal, plaintiff presents the following arguments for our consideration:

> POINT I
>
> THE COURT ABUSED ITS DISCRETION BY IGNORING CASELAW PRECEDENT AND EXPANDED THE SCOPE OF PINNACLE'S LEGITIMATE BUSINESS INTERESTS IN ITS CLIENT/CUSTOMERS, BASED ONLY UPON PINNACLE'S IPSE D[I]XIT STATEMENTS OF HAVING A "BUSINESS RELATIONSHIP" WITH TRADER JOE'S.

A.    Pinnacle Does Not Have A Legitimate Business Interest In R3 Because Herman Developed His Relationship with R3 Prior to Joining Pinnacle.

1.  Pinnacle Does Not Have a Legitimate Business Interest in R3 Because R3 Is The Customer In Question, Not Trader Joe's.

B.    The Court's Rulings Ignored The Policies Against Anti-Competition and Restraints On Trade In Restrictive Covenants Of An Employment Agreement.

## POINT II

PINNACLE IS IN BREACH FOR NOT PAYING HERMAN HIS SEVERANCE MONEY, AND PINNACLE IS ESTOPPED FROM ENFORCING THE SEPARATION AGREEMENT.

A.    Pinnacle Is Estopped From Enforcing the Separation Agreement Because The Parties Were Negotiating New Terms of the Agreement Accord, As Evidenced by Pinnacle's Non-Payment to Herman.

## POINT III

PINNACLE USED INTERCEPTED EMAILS AS AN EXHIBIT IN PINNACLE'S SECOND MOTION FOR CONTEMPT IN VIOLATION OF THE DOCTRINE OF UNCLEAN HANDS.

A.  Pinnacle Obtained The Intercepted Emails By Misappropriating Herman's Name Through Pinnacle's Website for Commercial and Exploitative Purposes.

A-3643-20

B.    Pinnacle Has Violated The Electronic Communications Privacy Act by Intercepting Emails That Were Intended For . . . Herman By Misappropriating Herman's Name In Its Website for Commercial and Exploitative Purposes.

We "review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458 (App. Div. 2018). An abuse of discretion "only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

We first observe that defendant is primarily challenging the substantive enforceability of the anti-competition agreement and the legitimacy of the trade restraints imposed by the Chancery Division's March 25, 2021 and April 29, 2021 orders. Defendant did not appeal those orders and the issues must await the final adjudication of the matter below. See State v. Robinson, 200 N.J. 1, 19 (2009). The only issue before us is whether the court abused its discretion by entering the August 12, 2021 contempt order.

A-3643-20

The record amply supports the judge's conclusion that defendant violated the existing restraints by performing work at Trader Joe's stores in Christiana, Delaware and Long Island City, New York. Defendant was restrained from "doing business with any supermarket, box store or other customer or client for which Pinnacle has done business or developed a prospective business relationship with at any time through . . . December 30 [], 2020." As a result, we discern no abuse of discretion in the judge's finding of contempt.

Defendant's remaining arguments are without merit. Defendant argues, first, that plaintiff failed to fulfill its obligation to pay severance under the agreement. This argument was properly rejected by the Chancery Division. Plaintiff's alleged failure to perform has no bearing on whether defendant violated the Chancery Division's March 25 and April 29, 2021 orders imposing restraints.

Next, defendant argues that plaintiff improperly intercepted his email and relied on those emails as an exhibit in its second motion for contempt. Employers may monitor and regulate the use of workplace computers because they have a legitimate interest to protect their assets, reputation, and business productivity. Stengart v. Loving Care Agency, Inc., 201 N.J. 300, 324–25 (2010). Plaintiff's viewing of emails sent to defendant's former Pinnacle email

13

address for the purpose of business continuity after he left the firm does not violate any identified law. To the extent the judge relied on emails sent to defendant's former work email address, we perceive no abuse of discretion or reversible error.

To the extent we have not addressed defendant's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3643-20