**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0360-24

GREEN LAGO, LLC,

     Plaintiff-Respondent,

v.

ANY GARMENT CLEANERS
NO. 3, LLC, and CARLOS
MARROQUIN, individually,

     Defendants,

and

DRY CLEAN EXPRESS
NO.1, LLC, and MATSAMY
VASQUEZ, individually,

     Defendants-Appellants.

_____

     Argued October 20, 2025 – Decided November 21, 2025

     Before Walcott-Henderson and Bergman.

     On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1913-14.

Ronald L. Daugherty argued the cause for appellants (Salmon, Ricchezza, Singer & Turchi, LLP, attorneys; Ronald L. Daugherty, on the briefs).

Geoffrey E. Lynott argued the cause for respondent (McCarter & English, LLP, attorneys; Frederick C. Biehl, III, Geoffrey E. Lynott, and Michael P. Lynch, on the brief).

PER CURIAM

In this collection action, defendants Dry Clean Express No. 1, LLC ("DCE-1") and its principal, Matsamy Vasquez,[1] appeal from a September 27, 2024 amended judgment entered in favor of plaintiff Green Lago, LLC ("Green Lago"), awarding jointly and severally $1,625,900.68, plus attorney's fees of $21,132.50, for a total of $1,647,033.18, with post-judgment interest of 18% per annum. DCE-1 and Vasquez dispute the validity the original judgment entered in 2015, claiming lack of service of the complaint and further contend the court's grant of 18% per annum interest as opposed to interest under Rule 4:42-11(a) was in error. We affirm.

---

[1] In the instant appeal DCE-1 and Vasquez are the sole defendants-appellants. In this opinion, however, consistent with the underlying briefs, we refer to DCE-1, Vasquez, Marroquin, and Any Garment Cleaners No. 3 ("AGC-3") as "defendants," except where we refer to Carlos Marroquin individually.

2

I.

This matter has an extensive prior history dating from the 2015 filing of plaintiff's complaint and various subsequent orders enforcing litigant's rights as defendants failed to satisfy the court ordered levy. We, however, limit our recitation of the facts and discussion to those pertinent to our determination of the issues raised before us.

In November 2013, Green Lago sold two dry-cleaning businesses to Any Garment Cleaners No. 3, LLC ("AGC-3") for approximately $465,573. AGC-3 executed a promissory note in favor of Green Lago for this purchase price, which was personally guaranteed by AGC-3's managing member, Carlos Marroquin. It is undisputed that neither AGC-3 nor Marroquin made any of the monthly payments under the note. Green Lago sued for breach of the promissory note and obtained a default judgment against both AGC-3 and Marroquin in the amount of $542,258.61 on January 9, 2015. This 2015 judgment was never amended until 2024.

Following the entry of default judgment, Green Lago learned that Marroquin had transferred ownership of one of the dry-cleaning businesses to his brother, Vasquez, and his wholly-owned company DCE-1. Green Lago also uncovered a "Consulting Agreement" executed on January 5, 2015, days prior

3

to the entry of default against AGC-3, in which Vasquez and DCE-1 agreed to pay Marroquin $1,325,000 for the dry-cleaning business to be paid in 36 installments of $7,930.05, with an additional "balloon" payment of $1,075,650 at the end of the 36 months. Vasquez, through DCE-1, made some payments to Marroquin but as of early 2018, over $1 million remained outstanding and neither DCE-1 nor Vasquez made any further payments.

Green Lago subsequently moved in the Law Division for a writ of execution against the proceeds Vasquez and DCE-1 had agreed to pay to Marroquin directly pursuant to the Consulting Agreement.[2] In January 2019, when Vasquez and DCE-1 did not fully comply, Green Lago moved for an order in aid of litigant's rights and for the turnover of funds under N.J.S.A. 2A:17-63.[3] Defendants did not admit the debt and Marroquin opposed plaintiff's motion and cross-moved seeking to vacate the default judgment, stay enforcement

---

[2] The writ of execution acted as a levy on "[a]ny and all rights, credits, monies [and] effects in [his] hands due or to become due to [AGC] and [] Marroquin."

[3] "After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just." N.J.S.A. 2A:17-63.

A-0360-24

proceedings, and consolidate the instant matter with a pending related lawsuit plaintiffs had filed against defendants Marroquin, AGC-3, Vaquez, and DCE-1.[4]

The court granted plaintiff's motion and ordered defendants to turn over monthly payments due under the Consulting Agreement to the Sheriff in an August 2019 order. In that same order, the court denied defendant Marroquin's motion to vacate the default judgment based on his assertions he was never served with the 2015 complaint and the default judgment should therefore be voided. The court concluded Marroquin had in fact been served with the complaint as evidenced by service of the complaint and summons, Marroquin's awareness of this action, and confirmation by Marroquin's attorney. Marroquin did not appeal this May 2019 decision.

Approximately one year later, when defendants failed to remit the payments due, plaintiff moved for the first of three orders to enforce litigant's rights and for interest in the amount of 18% pursuant to the express terms in the

---

[4] In this action, plaintiff alleged that Marroquin fraudulently transferred Union County dry cleaning businesses to Vasquez and companies he owned for less than fair market value and with the intent to place plaintiff's assets beyond reach, in violation of the Uniform Fraudulent Transfer Act ("UFTA"), codified under N.J.S.A. 25:2-20 et seq. The UFTA provides remedies for creditors where debtors have fraudulently transferred assets to avoid collection.

5

Consulting Agreement. The court granted plaintiff's motion over defendants' objection and again ordered defendants to make monthly payment to the Sheriff in accordance with the Consulting Agreement until the debt was paid.

On September 10, 2021, Marroquin filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code and subsequently obtained an order discharging his debts. This order discharged Marroquin of personal liability over debts owed and explained that creditors "cannot collect discharged debts," but that a creditor with a lien may enforce a claim against the debtors' property subject to that lien.

In the following January, plaintiff again sought to enforce the court's prior orders directing defendants to turnover funds and for 18% interest, which was granted on April 12, 2024. In that order, the court added Vasquez and DCE-1 and set the amount of the judgment at $1,625,900.68, inclusive of interest of 18% per annum.

Approximately six months later, plaintiff filed its final motion in aid of litigant's rights, seeking a final judgment of $1,625,900.68 plus 18% interest. The court granted plaintiff's motion in its entirety, awarding attorney's fees and post-judgment interest at 18% pursuant to the express terms of the parties' Consulting Agreement, and entered a final judgment on September 13, 2024.

6

The court explained that although fee-shifting provisions are generally disfavored, New Jersey law allowed the parties to contract for attorney's fees, provided the fees are reasonable. The court agreed the contractual interest rate was expressly permitted based on the underlying agreement, and that the lower statutory interest rate set forth under Rule 4:42-11(a) would not control. On September 27, 2024, the court entered an amended judgment solely against defendants DCE-1 and Vasquez in the amount of $1,625,900.68, plus $21,132.50 in attorney's fees.

This appeal followed.

## II.

The trial court's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Likewise, a trial court's determination of whether to void a default judgment pursuant to Rule 4:50-1 "warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion arises when a court's decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Wear

A-0360-24

v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A motion to enforce litigant's rights is the appropriate vehicle to enforce a court's prior order. Abbott v. Burke, 206 N.J. 332, 359 (2011) "[T]he scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Id. at 371. The trial court's determination regarding enforcement of litigant's rights pursuant to Rule 1:10-3 is reviewed on appeal for abuse of discretion. Savage v. Tp. of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022); Wear, 455 N.J. Super. at 458-59.

## A.

Before us, DCE-1 and Vasquez argue the court erred in granting the 2015 default judgment against AGC-3 and Marroquin and as a result, the judgment and subsequent writ of attachment must be vacated. They maintain "[a]ll of [p]laintiff's requested relief against defendants in this case center around a writ of execution issued against [them] based upon the default judgment entered against [d]efendant Carlos Marroquin," and "service of process was defective and the judgment was void."

A default judgment is considered void if rendered in the face of defective personal service. Rosa v. Araujo, 260 N.J. Super. 458, 462 (App. Div. 1992).

However, affidavits of service are presumed correct and may be rebutted only by clear and convincing evidence. See Jameson v. Great Atl. and Pac. Tea Co., 363 N.J. Super. 419, 426 (App. Div. 2003). Additionally, despite conflicting claims, defendants bear the burden to defeat the presumption of validity of service beyond bare assertions. Id. at 427. Even if a court finds technical defects in service, a judgment may not be considered void if the defendant had actual notice of the action. Citibank, N.A. v. Russo, 334 N.J. Super. 346, 352 (App. Div. 2000).

Applying the requisite deferential standard, we reject appellants' contention the default judgment entered in 2015 was "defective" and must be voided. Reviewing this same argument, the court properly considered defendants' 2019 post-judgment action in response to plaintiff's complaint and found no basis to void the default judgment. As the court stated:

> Mr. Marroquin admits receiving the complaint and knew a default was going to be entered. He did not deny hiring an attorney to attempt to negotiate a settlement for himself and AGC-3. Under these circumstances the court will not vacate the judgment. The rules with regard to service are designed to [ensure] parties receive notice. He has admitted he has received notice.

We also note that plaintiff's supplemental certification made as part of this record shows that shortly after service of the complaint, Marroquin's counsel

communicated with plaintiff's counsel regarding a possible settlement, which is indicative of Marroquin's knowledge of the complaint. Thus, appellants cannot establish a lack of actual notice of the action.

Moreover, the extensive record before us makes clear the parties have engaged in lengthy post-judgment litigation spanning approximately ten years, including multiple motions by plaintiff seeking to compel defendants to satisfy the judgment entered against them. Against this backdrop, we are hard-pressed to conclude the court erred in its 2019 denial of defendants' application for vacatur of the 2015 default judgment. Rather, we agree with the court that defendants asserted no basis to void the default judgment.

B.

Appellants next contend they were denied due process because they were added to the action as judgment debtors only at the post-judgment enforcement stage, preventing them from taking discovery or presenting defenses. They maintain that as non-parties to the initial lawsuit, they did not admit any debt due under the Consulting Agreement as required by N.J.S.A. 2A:17-63. The statute provides that after a levy upon a debt due to the judgment debtor from a third party, the court may, upon notice and opportunity to contest, direct payment to the creditor if the court finds, based on the evidence and any

10

response from the garnishee, that a debt is in fact due. It does not require an express admission of liability by the garnishee.

Applying the plain language of the statute, we are unpersuaded by appellants' argument the turnover order was improper absent their admission of indebtedness. This argument is without merit and constitutes a misreading of the statute. The statute is intended to authorize enforcement after a levy and court determination of a debt is due, following notice and opportunity to contest.

Here, the court considered Vasquez's own testimony regarding the Consulting Agreement, payment records, and supporting documentation, and found the debt owed to Marroquin under the Consulting Agreement was valid and subject to levy and turnover to Green Lago. Marroquin had notice of the post-judgment enforcement proceeding and participated in the subsequent motion practice and neither Marroquin nor Vasquez appealed any court orders until the entry of the September 2024 amended final judgment. The requirements of due process in post-judgment proceedings are more limited than at the merits stage: due process is satisfied if the nonparties, here DCE-1 and Vasquez, receive reasonable notice and a meaningful opportunity to oppose execution or contest their liability before funds are turned over or judgments are enforced. See First Resol. Inv. Corp. v. Seker, 171 N.J. 502, 515 (2002) (citing

11

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950))
(explaining that post-judgment due process requires only notice and an
opportunity to be heard before property is taken or a judgment is enforced).

We further note the court added Vasquez and DCE-1 as direct judgment
debtors, as opposed to mere garnishees, after AGC-3 and Marroquin failed to
comply with multiple turnover orders. We observe no error on the part of the
court given the persistent withholding of funds from plaintiff.

Additionally, the record shows that following the entry of default
judgment, Green Lago served Vasquez and DCE-1 with all relevant writs,
motions, and court orders, prompting Vasquez and DCE-1 to appear, submit
written opposition, file certifications, and participate in motion hearings, thus
availing themselves of all procedural and due process safeguards.

C.

We next turn to appellants' challenge to the turnover orders, as well as the
calculation of both the amount due and post-judgment interest. They argue the
court exceeded its authority in determining the scope of the turnover orders and
the amount to be paid, and that any recovery by plaintiff was limited to sums
actually accrued under the Consulting Agreement with Marroquin. They further
maintain that because Marroquin had been discharged in bankruptcy, plaintiff

A-0360-24

could not collect beyond what was independently due from Vasquez or DCE-1, and the court's orders impermissibly extended the reach of enforcement beyond those limits. We are unpersuaded.

Appellants' challenge to the court's grant of 18% per annum post-judgment interest, in which they argue the court was constrained to apply the Rule 4:42-11(a) rate, is equally unavailing.[5] The court properly applied the contractual rate of 18% as set forth in the promissory note. Pursuant to basic breach of contract principles, the promissory note provided for 18% interest and defendants failed to demonstrate that 18% was unconscionable or contrary to public policy. See Metlife Cap. Fin. Corp. v. Washington Ave. Assocs. L.P., 159 N.J. 484, 494, 498-99, 504 (1999); State Bank v. Rinaldi, 303 N.J. Super. 239, 265 (App. Div. 1997). Accordingly, we reject appellants' assertion the court abused its discretion by applying the express contract rate.

We further reject appellants' assertion the bankruptcy discharge order precludes any recovery against them and that the continuing enforcement by plaintiff violates the automatic stay provision. Their argument is without merit as it is contrary to the express language of the discharge order. That order

---

[5] Rule 4:42-11(a) addresses the calculation of simple interest on awards, orders, or judgments.

explicitly states "a discharge removes the debtors' personal liability for debts owed <u>before the debtors' bankruptcy case was filed</u>." (emphasis added).

Here, Marroquin filed his bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas on September 10, 2021, and the discharge order relieved him of his personal liability for debts owed prior to the petition being filed. However, as to defendants Vasquez and DCE-1, they are not the beneficiaries of this discharge. <u>See</u> 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"). Thus, the discharge did not eliminate the underlying obligation owed by Vasquez and DCE-1 pursuant to the court's prior turnover orders, nor did it affect Green Lago's right to continue enforcing its judgment as to the levied property and assets.

D.

Lastly, we are equally unpersuaded by appellants' remaining arguments contending the entire controversy doctrine applies and the court erred by failing to consolidate this post-judgment enforcement action with the previously pending, now dismissed, lawsuit against Marroquin. The entire controversy doctrine "generally requires parties to an action to raise all transactionally related claims in that same action." <u>Largoza v. FKM Real Est. Holdings, Inc.</u>,

A-0360-24

474 N.J. Super. 61, 79 (App. Div. 2022) (quoting <u>Carrington Mortg. Servs., LLC v. Moore</u>, 464 N.J. Super. 59, 67 (App. Div. 2020)).

Here, however, the post-judgment proceedings were confined to the enforcement and satisfaction of a previously-adjudicated debt and did not address the merits of plaintiff's claims because defendants failed to respond to the complaint. Under these circumstances, we do not countenance defendants' belated attempts to resurrect a long-settled matter based on the entire controversy doctrine. We further note this issue was not raised below and we decline to address its merits here. <u>Alan J. Cornblatt, P.A. v. Barow</u>, 153 N.J. 218, 230 (1998) (citing <u>State v. Churchdale Leasing, Inc.</u>, 115 N.J. 83, 100 (1989)).

To the extent we have not addressed any of appellants' arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>Rule</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0360-24